Leonardo B. Cruz, Jr., Pro se,
2541 Calle Tres Lomas
San Diego, California 92139
Phone (619) 216-4627

FILED

2008 JUN 30  PM 12: 07

SOUTHERN DISTRICT OF CALIFORNIA

BY_____ KNH _____DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARDO B. CRUZ Jr., ) | |
|      Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | CASE NO. '08 CV 1157 BEN NLS |
| ) | |
| WMC MORTGAGE CORP., LITTON ) | |
| LOAN SERVICING, HOMEQ ) | **VERIFIED COMPLAINT** |
| SERVICING, TD SERVICE COMPANY ) | **AND MOTION FOR EX PARTE** |
| AND DEUTSCHE BANK NATIONAL ) | **TEMPORARY RESTRAINING ORDER** |
| TRUST COMPANY, ) | |
| ) | |
|      Defendants. ) | |
| ) | |
| ) | |

### VERIFIED COMPLAINT

### AND MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER

COME NOW the Plaintiff, LEONARDO B. CRUZ, JR., pro-se, and

sues Defendants WMC MORTGAGE CORP. (hereinafter "WMC"), LITTON

LOAN SERVICING, (hereinafter "Litton"), HOMEQ SERVICING

1  (hereinafter "Homeq"), TD SERVICE COMPANY (hereinafter "TD"),

2  DEUTSCHE BANK NATIONAL TRUST COMPANY (hereinafter "Deutsche

3  Bank"), and as grounds therefore would state as follows:

4                      **PRELIMINARY STATEMENT**

5                              1.

6      This Complaint is filed under the Truth in Lending Act,

7  15 U.S.C. section 1601 hereinafter called the "Act") to enforce

8  plaintiff's right to rescind a consumer credit transaction,

9  to void the Defendant's security interest in the Plaintiff's

10 home, and to recover statutory damages, reasonable fees and

11 costs by reason of the Defendant's violations of the Act and

12 Regulation Z, 12 C.F.R. section 226 (hereinafter called

13 "Regulation Z"). Plaintiff also seeks damages for Defendant's

14 violation of state law.

15

16

17                         **JURISDICTION**

18                              2.

19     Jurisdiction is conferred on this Court by 15 U.S.C.

20 section 1640 (e) and 28 U.S.C. sections 1331, 1337. The Court

21 has authority to issue a declaratory judgment by virtue of 28

22 U.S.C. section 2201.

23

24                           **PARTIES**

25                              3.

26

27     The Plaintiff, LEONARDO B. CRUZ, JR., is a natural person

28 residing at 2541 Calle Tres Lomas, San Diego, California   92139.

4.

Defendant WMC is a corporation engaged in the business of mortgage financing and doing business in San Diego, County, California.

5.

Defendant Litton, is a corporation engaged in the business of the servicing of mortgage loans and doing business in San Diego County, California.

6.

Defendant Homeq Servicing is a corporation engaged in the business of the servicing of mortgage loans and doing business in San Diego County, California.

7.

Defendant TD is a corporation engaged in the business of the servicing of mortgage loans and doing business in San Diego County, California.

8.

Defendant Deutsche Bank is a corporation engaged in the business of mortgage lending and doing business in San Diego County, California.

9.

All acts complained of occurred in San Diego County, California.

10.

At all times material hereto, the Defendants, in the ordinary course of its business, regularly extended, or offered to extend, consumer credit, for which a finance charge is or may

1    be imposed or which, by written agreement, is payable in more

2    than four installments.

3                              **FACTUAL ALLEGATIONS**

4                                    11.

5        On or about August 29, 2006, Plaintiff entered into a

6    consumer credit transaction ("the transaction") with Defendant

7    WMC in which the extended consumer credit was subject to  a

8    finance charge and which was initially payable to the Defendant

9    WMC.

10                                   12.

11       A true and correct copy of the **HUD-1** settlement statement

12   evidencing the transaction is attached hereto, marked as

13   **PLAINTIFF'S EXHIBIT A**, and by reference is incorporated herein.

14                                   13.

15       As part of this consumer credit transaction, the Defendant

16   retained a security interest in 2541 Calle Tres Lomas, San Diego

17   California, 92139, which is Plaintiff's home.

18                                   14.

19       The security interest was not created to finance the

20   acquisition or initial construction of Plaintiff's home.

21                                   15.

22       A true and correct copy of the **Deed of Trust** evidencing the

23   Defendant's security interest is attached hereto, marked

24   **PLAINTIFF'S EXHIBIT B**, and by reference is incorporated herein.

25                           **FIRST CAUSE OF ACTION**

26                                   16.

27

28

This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. section 1635 and Regulation Z, 12 C.F.R. section 226.23.

17.

In the ordinary course of business the servicing and the ownership of the subject note were either assigned or transferred to one or more of the following defendants, Litton, Homeq, TD and Deutsche Bank. Plaintiff is unclear and unsure at this point which defendant, in fact, is the lawful and true owner of the original note and the entity entitled to collect the payments under the note.

18.

In the course of the consumer credit transaction Defendants violated 15 U.S.C. Section 1635 (a) and Regulation Z section 226.23 (b) by failing to deliver to the Plaintiffs two copies of a notice of the right to rescind that:

    a. Identified the transaction.
    b. Clearly and conspicuously disclosed the security
       interest in the Plaintiff's home.
    c. Clearly and conspicuously disclosed the Plaintiff's
       right to rescind the transaction.
    d. Clearly and conspicuously disclosed how to exercise
       the right to rescind the transaction, with a form
       for that purpose designating the address of
       Defendant's place of business.
    e. Clearly and conspicuously disclosed the effects of
       the transaction.
    f. Clearly and conspicuously disclosed the date the
       rescission period expired.
    g. The Notice of the Right to Cancel was dated November
       16, 2005, and no new or updated Notice was given
       prior to the re-scheduled closing which occurred
       November 28, 2005, and which by law Plaintiff had a
       right to rescind within three days after the re-

scheduled closing date of November 28, 2005. As such a proper Notice of Right to Cancel was never given. Attached as Plaintiff's Exhibit "C" is a copy of the Notice of Right to Cancel dated November 16, 2005.

19.

The disclosure statement issued in conjunction with this consumer credit transaction, violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

a. By failing to include in the finance charge certain charges imposed by the Defendant payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. section 1605 and Regulation Z, section 226.4, thus improperly disclosing the finance charge in violation of 15 USC section 1638 (a) (3) and Regulation Z section 226.18 (d). Such amounts include, but are not limited to

   i.   The broker fee.
   ii.  The credit report fee, which is not a bona fide and reasonable fee.
   iii. The recording fees in excess of the actual recording fee which are therefore not a "bona fide and reasonable" fee.
   iv.  The settlement or Closing fee.

b. By improperly including certain charges, in the amount financed, which are finance charges, including but not limited to those itemized in Paragraph 12 (a) herein, the Defendant improperly disclosed the amount financed in violation of 15 U.S.C. section 1638 (a) (2) and Regulation Z, section 226.18 (b); and

c. By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. section 1606, Regulation Z, section 226.22, the Defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. section 1638 (a) (4) and Regulation Z, section 226.18 (c).

20.

1    The disclosures improperly made by Defendants as itemized

2  in paragraph 19 are material disclosures as defined in the Truth

3  in Lending Act, 15 U.S.C. section 1602 (u), Regulation Z226.23

4  n. 48.

5                              21.

6    The finance charge and APR were under-disclosed by more

7  that the tolerance levels set forth in U.S.C. section 1635 (f).

8                              22.

9    By reason of the material violations of 15 U.S.C. section

10  1638, Plaintiff has a right of rescission for three years from

11  the date of consummation of the loan pursuant to U.S.C. (f).

12                              23.

13    Plaintiff rescinded the transaction by sending to

14  Defendants at their business address by mail a notice of

15  rescission.

16                              24.

17    More than 20 calendar days have passed and Defendants have

18  failed to take any action necessary or appropriate to reflect

19  the termination of any security interest created under this

20  transaction, including the security interest describe as

21  required by 15 U.S.C. section 1635 (b) and Regulation Z section

22  226.23 (d) (2).

23                              25.

24    The Defendants have failed to return to the Plaintiffs any

25  money or property given by the Plaintiff to anyone, including

26  the Defendants, as required by 15 U.S.C. 1635 (b) and Regulation

27  Z 226.23 (d) (2).

28                              26.

As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. sections 1635 (a), 1640 (a),and 1641 (c), Defendants are liable to Plaintiff for:

    a. Rescission of this transaction.
    b. Termination of any security interest in Plaintiff's property created under the transaction
    c. Return of any money or property given by the Plaintiff to anyone including the Defendant, in connection with this transaction.
    d. Statutory damages for disclosure violations.
    e. Statutory damages for failure to respond properly to Plaintiff's rescission notice.
    f. Forfeiture of return of loan proceeds.
    g. Actual damages in an account to be determined at trial.
    h. Costs of this action.

                    PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case.
2. Declare the security interest in Plaintiff's home void.
3. Rescind the subject loan transaction.
4. Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interest void, including but not limited to the mortgage related to the subject transaction.
5. Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including Defendants, in connection with the transaction.
6. Enjoin Defendants, during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of the property.
7. Award the Plaintiff statutory damages for the disclosure violation, in the amount of twice the finance charge in

connection with this transaction, but not less than $200 or more than $2,000 as provided under 15 U.S.C. section 1640 (a).;

8. Award the Plaintiff statutory damages for Defendant's failure to respond properly to the Plaintiff's rescission notice, in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $2,000 as provided under 15 U.S.C. 1640 (a).

9. Order that, because of Defendant's failure to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendant to accept tender on reasonable terms and over a reasonable period of time;

10. Award actual damages in an amount to be established at trial;

11. Award Plaintiff costs

12. Award such other and further relief as the Court deems just and proper.

## VERIFICATION

Plaintiff/Affiant declares that he has read the foregoing Verified Complaint and under penalty of perjury that the foregoing facts and allegations as contained therein are true and correct.

_____ 6.30-08

Leonardo B. Cruz, Jr., Plaintiff
Pro Se
2541 Calle Tres Lomas
San Diego, California 92139
(619) 216-4627

Leonardo B. Cruz, Pro Se
2541 Calle Tres Lomas
San Diego, California 92139
(619) 216-4627


**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

_____

LEONARDO B. CRUZ, JR.,          )

                                )

          Plaintiff,            )     CASE NO.

vs.                             )

                                )
WMC MORTGAGE CORP., LITTON      )
LOAN SERVICING, HOMEQ           )
SERVICING, TD SERVICE COMPANY   )
AND DEUTSCHE BANK NATIONAL      )
TRUST COMPANY,                  )
                                )
          Defendants.           )

_____

**MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

1.

Plaintiff further move this Honorable Court Ex Parte for a Temporary Restraining Order enjoining and restraining the named Defendants from selling the property at a foreclosure sale scheduled for June 12, 2008.

2.

Plaintiff will suffer irreparable injury if the foreclosure sale is not enjoined until plaintiff has a fair and adequate opportunity to have his claims heard. Plaintiff may well have

1  the right to rescind the subject mortgage loan transaction. 15

2  USC 1635 (f) provides for a three (3) year limitation. Further,

3  it is likely that plaintiff will prevail on his claims of truth

4  in lending violations as the potential violations are numerous,

5  as more fully and particularly set forth in Plaintiff's

6  Complaint.

7                                   3.

8       In an abundance of caution and based upon legal and

9  equitable considerations, this Court should enter a Preliminary

10 Temporary Restraining Order to enjoin any foreclosure sale to

11 allow Plaintiff and Defendants to set forth their respective

12 claims. Further, the scheduled foreclosure sale would cut off

13 Plaintiff's right to seek rescission under 15 U.S.C. 1635 (f).

14                                  4.

15      This motion is filed on an emergency basis in that if the

16 foreclosure sale goes forward, that Plaintiff will lose the

17 property, possession of the property and all of his equity in

18 the property even if his claims are meritorious. Plaintiff

19 requests that the Court grant the Temporary Restraining Order

20 prior to Defendant's being heard in opposition due to the

21 pending foreclosure sale there is no time for Defendant's to be

22 heard prior to the foreclosure sale. Plaintiff requests that the

23 Court grant a Preliminary Temporary Restraining Order without

24 bond, as plaintiff is unable to provide a bond of any kind or

25 type.

26                                  5.

27

28

1    When the potential harm to the plaintiff is balanced
2  against the rights of the defendants, greater injury will be
3  inflicted upon plaintiff in the loss of his home than upon
4  defendants. Serious questions are raised and the balance of
5  hardship tips in the favor of Plaintiff, his hardship being
6  greater, while the hardship on Defendants is lesser. Since the
7  probability of success on Plaintiff's claim is likely and his
8  hardship is greater, this Court should grant the Temporary
9  Restraining Order.

10                              6.

11    The public interest will be served by allowing plaintiff to
12  remain in the home, preventing him from becoming homeless.

13                              7.

14    Plaintiff has given notice of these proceedings to both
15  Defendants and this request for a temporary restraining Order as
16  evidenced by the certificate of service which accompanies this
17  request.

18    WHEREFORE, Plaintiffs respectfully pray that this Honorable
19  Court grant to him the following relief:

20                              8.

21    Accept jurisdiction over the parties and the subject matter
22  of this cause, and

23                              9.

24    Enter a Preliminary Temporary Restraining Order enjoining
25  and restraining the foreclosure sale scheduled for May 29, 2008
26  and

27                             10.

28    Grant the Preliminary Restraining Order without bond.

11.

Grant such other and further relief as the Court deems equitable, appropriate and just.

**VERIFICATION**

I verify, under the penalty of perjury, that I have read the foregoing Motion for Temporary Restraining Order and that the facts and allegations contained therein are true and correct.

6-30-08

Leonardo B. Cruz, Jr., Plaintiff
Pro Se
2541 Calle Tres Lomas
San Diego, California 92139
(619) 216-4627

Leonardo B. Cruz, verified Complaint & Motion for TRO, 6/11/2008. - 13

PLAINTIFF'S

# EXHIBIT    "A"

( Hud -1 )



**LandAmerica Southland Title**

Southland Title
303 H. St. Suite 200 Chula Vista CA 91910
Phone: (619) 691-6343
Fax: (619) 691-0231
Escrow Officer: Myrna T.F. Reyes

**SCV753849-MR**

## Buyer's / Borrower's Final Settlement Statement

| | | | |
|---|---|---|---|
| **Property:** | 2541 Calle Tres Lomas<br>San Diego, CA 92139 | **Closed Date:** | 9/8/2006 |
| **Buyer:** | Leonardo B. Cruz Jr. | **Escrow Number:** | SCV753849-MR |

| | **Debits** | **Credit** |
|---|---|---|
| **New Loan 1** | | |
| Principal from WMC MORTGAGE CORP. | | $360,000.0( |
| Origination Fee to LORENA MERONOFF | $1,800.00 | |
| Appraisal Fee to LORENA MERONOFF | $350.00 | |
| Credit Report to LORENA MERONOFF | $30.00 | |
| Administration Fee to WMC MORTGAGE CORP. | $625.00 | |
| Tax Service to FIDELITY NATIONAL | $20.00 | |
| Processing Fee to LORENA MERONOFF | $600.00 | |
| Underwriting Fee to LORENA MERONOFF | $450.00 | |
| Document Preparation to WMC MORTGAGE CORP. | $242.00 | |
| Flood Cert. Fee to First American Flood Data SS | $12.00 | |
| Interest from 9/8/2006 to 9/1/2006 @75.2055/day | | |
| **Payoff 1** | | $526.44 |
| Principal to Washington Mutual | $250,000.00 | |
| Interest to 9/12/2006 | $3,150.69 | |
| Reconveyance Fee to Washington Mutual | $9.00 | |
| **Escrow Charges** | | |
| Escrow Fee | $400.00 | |
| Document Preparation QC Prep (2) | $50.00 | |
| Email Doc Fee | $50.00 | |
| **Title Charges** | | |
| Lender's Coverage to SOUTHLAND TITLE | $858.00 | |
| Taxes Defaulted Taxes | $3,400.73 | |
| Tax Report | $5.00 | |
| **Additional Services** | | |
| Messenger Fee | $40.00 | |
| Overnight Mail X2 | $40.00 | |
| **Recording Fees** | | |
| Recording Grant Deed | $30.00 | |
| Recording Deed of Trust | $66.00 | |
| **Additional Settlement Fees** | | |
| Hazard Ins Premium to FARMERS INSURANCE | $712.15 | |
| NOTARY/LOAN SIGN UP FEE to ESTHER CELICIOUS JAMILA | $150.00 | |
| **Proceeds or Balance Due** | | |
| Cash From/To Borrower | $97,435.87 | |
| **Balance Due** | | $0.00 |
| **Totals:** | **$360,526.44** | **$360,526.44** |

---

### Save this Statement for Income Tax purposes.

CERTIFIED COPY _____

08 JUNE 29

A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0265

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. [ ] FHA   2. [ ] FmHA   3. [ X ] Conv.Unins. | 6. File Number: | 7. Loan Number: | | 8. Mortgage Insurance Case Number: |
| 4. [ ] VA   5. [ ] Conv.Ins. | SCV753849-MR | | | |

C. NOTE:  THIS NOTE IS FURNISHED TO GIVE YOU A STATEMENT OF ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND NOT INCLUDED IN THE TOTALS.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| LEONARDO B. CRUZ JR.<br><br>2541 CALLE TRES LOMAS<br><br>SAN DIEGO, CA 92139 | | WMC MORTGAGE CORP.<br>600 ANTON BLVD., SUITE 1900,<br>COSTA MESA, CA 92626 |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 2541 CALLE TRES LOMAS ,<br>SAN DIEGO, CA 92139 | SOUTHLAND TITLE | |
| | Place of Settlement<br>303 H. ST. SUITE 200,<br>CHULA VISTA, CA 91910 | I. Settlement Date<br><br>9/8/2006 4:59:00 PM |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower | $9,404.44 | 403. | |
| 104. (See Exhibit 104) | $253,159.69 | 404. | |
| 105. | | 405. | |
| **Adjustments For Items Paid By Seller In Advance** | | **Adjustments For Items Paid By Seller In Advance** | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |

| | | | |
|---|---|---|---|
| **120. Gross Amount Due From Borrower** | $262,564.13 | **420. Gross Amount Due To Seller** | $0.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or Earnest Money | | 501. Excess deposit | |
| 202. Principal from WMC MORTGAGE CORP. | $360,000.00 | 502. Settlement Charges To Seller (line 1400) | $0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) taken Subject To | |
| 204. | | 504. Payoff of First Mortgage Loan | |
| 205. | | 505. Payoff of Second Mortgage Loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| **700. Total Sales Commission** | | |
| Division of Commission (line 700) As Follows: | | |
| 701. Listing Agent Commission | | |
| 702. Selling Agent Commission | | |
| 703. Commission paid at settlement | | |
| **800. Items Payable In Connection With Loan** | | |
| 801. Origination Fee to LORENA MERONOFF | $1,800.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee to LORENA MERONOFF | $350.00 | |
| 804. Credit Report to LORENA MERONOFF | $30.00 | |
| 805. Lender's Inspection Fee | | |
| 810. (See Exhibit 810) | $1,949.00 | |
| **900. Items Required By Lender To Be Paid In Advance** | | |
| 901. Interest from 9/8/2006 to 9/1/2006 @75.2055/day | -$526.44 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Ins Premium to FARMERS INSURANCE | $712.15 | |
| **1000. Reserves Deposited With Lender** | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| **1100. Title Charges** | | |
| 1101. (See Exhibit 1101) | $450.00 | |
| 1102. Abstract or Title Search | | |
| 1103. Title Examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Preparation to SOUTHLAND TITLE ESCROW - SOUTH BAY | $50.00 | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| 1108. Title Insurance to SOUTHLAND TITLE | $858.00 | |
| 1109. Lender's Coverage | | |
| 1110. Owner's Coverage | | |
| 1111. | | |
| 1113. (See Exhibit 1113) | $3,405.73 | |
| **1200. Government Recording And Transfer Charges** | | |
| 1201. Recording Fees: Deed $ Mortgage $ Release $ | | |
| 1202. City/county tax/stamps | | |
| 1203. State tax/stamps | | |
| 1205. (See Exhibit 1205) | $96.00 | |
| **1300. Additional Settlement Charges** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1309. NOTARY/LOAN SIGN UP FEE to ESTHER CELICIOUS JAMILA | $150.00 | |
| 1351. (See Exhibit 1351) | $80.00 | |
| 1400. Total Settlement Charges (Enter On Lines 103, Section J And 502, Section K) | $9,404.44 | $0.0 |

CERTIFIED COPY _____

08 JUNE 29

CV753849 - MR

## Exhibits

| | Buyer(s) |
|---|---|
| **xhibit 104** | |
| Principal to Washington Mutual | $250,000.00 |
| Interest to 9/12/2006 | $3,150.69 |
| Reconveyance Fee to Washington Mutual | $9.00 |
| **xhibit 810** | |
| Administration Fee to WMC MORTGAGE CORP. | $625.00 |
| Tax Service to FIDELITY NATIONAL | $20.00 |
| Processing Fee to LORENA MERONOFF | $600.00 |
| Underwriting Fee to LORENA MERONOFF | $450.00 |
| Document Preparation to WMC MORTGAGE CORP. | $242.00 |
| Flood Cert. Fee to First American Flood Data SS | $12.00 |
| **xhibit 1101** | |
| Escrow Fee to SOUTHLAND TITLE ESCROW - SOUTH BAY | $400.00 |
| Email Doc Fee to SOUTHLAND TITLE ESCROW - SOUTH BAY | $50.00 |
| **xhibit 1113** | |
| Taxes Defaulted Taxes to SOUTHLAND TITLE | $3,400.73 |
| Tax Report to SOUTHLAND TITLE | $5.00 |
| **xhibit 1205** | |
| Recording Grant Deed to SOUTHLAND TITLE | $30.00 |
| Recording Deed of Trust to SOUTHLAND TITLE | $66.00 |
| **xhibit 1351** | |
| Messenger Fee to SOUTHLAND TITLE ESCROW - SOUTH BAY | $40.00 |
| Overnight Mail X2 to SOUTHLAND TITLE ESCROW - SOUTH BAY | $40.00 |

CERTIFIED COPY _____

08 JUNE 29

PLAINTIFF'S

# EXHIBIT "B"

# (Deed of Trust)

CERTIFIED COPY

*08 JUNE 29*

Recording Requested By /
Return To:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn:     (WHOLESALE)

Prepared By:
KEILA GONZALEZ

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

---

[Space Above This Line For Recording Data]

### DEED OF TRUST

Serv #: 11638373

CRUZ
Loan #: 11638373
MIN:     100136300116383737
PIN:     588-192-03-00

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated August 29, 2006          , together with all Riders to this document.

**(B)** **"Borrower"** is LEONARDO B. CRUZ, JR. A SINGLE MAN

Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is WMC MORTGAGE CORP.

Lender is a Corporation                          organized and existing under the laws of CALIFORNIA                      . Lender's address is P.O. BOX 54089, LOS ANGELES, CA 90054-0089

**(D)** **"Trustee"** is WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION

**CALIFORNIA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01
DOCUKCA1
DOCUKCA1.VTX   12/19/2005                                                      *(page 1 of 14 pages)*

11638373                                                    11638373

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated   **August 29, 2006**      . The Note states that Borrower owes Lender

**Three Hundred Sixty Thousand And 00/100**

Dollars (U.S. $  **360,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **September 1, 2036**       .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] **Balloon Rider** | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

11638373

11638373

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SAN DIEGO

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.

which currently has the address of  2541 CALLE TRES LOMAS

[Street]

SAN DIEGO                          , California  92139                 ("Property Address"):

[City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 3 of 14 pages)*

DOCUKCA3
DOCUKCA3.VTX  12/16/2005

11638373                                                              11638373

a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

 2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

 If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

 Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

 3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

 Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

 The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01        *(page 4 of 14 pages)*
DOCUKCA4
DOCUKCA4.VTX  12/16/2005

11638373                                                        11638373

verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESP A, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
TAP-CAL AS                                                                          *(page 5 of 14 pages)*
DOCUKCA5.VTX  12/16/2005

11638373
11638373

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

11638373                                                                    11638373

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for

CALIFORNIA- Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 7 of 14 pages)*
168 URLA2
300MCA7 VTX  12/16/2005

11638373                                                11638373

such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 8 of 14 pages)

11638373                                                    11638373

otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01         *(page 9 of 14 pages)*
DOC 3KL AS
DOCUKCAG_VTX  12/16/2005

11638373                                    11638373

by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 10 of 14 pages)*
DRFTKG7G
DOCUKAAA.VTX  12/16/2005

11638373                                                    11638373

Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall co ntinue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous

CALIFORNIA--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01        *(page 11 of 14 pages)*

DRAWN
CAGARACAB VER  12/14/2005

11638373                                    11638373

Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

     **22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

     **If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

     **Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

     **23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

     **24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

     **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 12 of 14 pages)*

DRAFT.MODEL
C6009MGMC.VTX   12/16/2005

11638373                                                                    11638373

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____

  - Borrower - LEONARDO, JR B CRUZ - Date -

CERTIFIED COPY _____

                                                08 JUNE 29

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01        *(page 13 of 14 pages)*
DOCUKCAL3
DOCUKCAD.VTX  12/16/2005

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provide by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiatir the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)   PLAINTIFFS | DEFENDANTS   WMC Mortgage Corp., Litton Loan Servicing, |
|---|---|
| LEONARDO B. CRUZ, JR.  Pro Se | HOMEQ Servicing, TD Service Company and Deutsche Bank National Trust Company |

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

BY ____ KMH ____ DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Leonardo B. Cruz, Jr.,2541 Calle Tres Lomas, S.D. CA 92139

Attorneys (If Known)

'08 CV 1157 BEN NLS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plainti and One Box for Defendant) | | | | |
|---|---|---|---|---|---|---|
| | | (For Diversity Cases Only) | | | | |
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question (U.S. Government Not a Party) | | PTF DEF | | PTF | DEF |
| | | Citizen of This State | ☐ 1   ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2   ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3   ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Ac |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

| V. ORIGIN (Place an "X" in One Box Only) | | | | | | Appeal to Distric Judge from |
|---|---|---|---|---|---|---|
| ☒ 1   Original Proceeding | ☐ 2   Removed from State Court | ☐ 3   Remanded from Appellate Court | ☐ 4   Reinstated or Reopened | ☐ 5   Transferred from another district (specify) | ☐ 6   Multidistrict Litigation | ☐ 7   Magistrate Judgment |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1601 ET SEQ.
Brief description of cause:   TILA VIOLATIONS

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☒ Yes  ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE | DOCKET NUMBER |
|---|---|---|---|

DATE   06-30-2008                     SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  152406   AMOUNT  $350   APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

TAC 6/30/08



**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**#  152406     —  TC**

**June 30, 2008
12:09:58**

**Civ Fil Non-Pris**
USAO #.: 08CV1157
Judge..: ROGER T BENITEZ
Amount.:
Check#.: PC254                    $350.00 CK

**Total—>    $350.00**

FROM: LEONARDO B. CRUZ
            VS
        WMC MORTGAGE CORP. ET AL.